IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

CHARLES VINCENT WHITCHER III,

                Plaintiff,

v.                                                                                              OPINION and ORDER

ANDREW SAUL,                                                                    20-cv-445-jdp
    Commissioner of the Social Security Administration,

                Defendant.

---

Plaintiff Charles Vincent Whitcher III seeks judicial review of a final decision of defendant Andrew Saul, Commissioner of the Social Security Administration, finding Whitcher not disabled within the meaning of the Social Security Act. Whitcher contends that administrative law judge Nathan Mellman (ALJ) erred in numerous ways, but the court is not persuaded that the ALJ made any errors that require a remand. So the court will affirm the ALJ's decision and cancel the hearing scheduled for March 9, 2021.

ANALYSIS

Whitcher sought benefits based on both physical and mental impairments, alleging disability beginning in 2016 when he was 50 years old. R.15, 56.[1] In a July 2019 decision, the ALJ found that Whitcher suffered from several severe impairments: degenerative disc disease lumbar with sciatica, obesity, right knee degenerative disc disease status post arthroscopy, status post right shoulder surgery for rotator cuff, and left shoulder tear/degenerative joint disease. *Id.* The ALJ ascribed to Whitcher the residual functional capacity (RFC) to perform

---

[1] Record cites are to the administrative transcript, located at Dkt. 21.

light work, which means that he can frequently lift and carry 10 pounds, occasionally lift and carry 20 pounds, and sit, stand, and walk for six hours of an eight-hour workday. R. 17. Based on the testimony of a vocational expert, the ALJ found that Whitcher could not perform his past work, but he was not disabled because he could work in jobs available in the national economy, including as an assembler or sales attendant.

On appeal, the court's role is to determine whether the ALJ's decision is supported by substantial evidence, meaning that the court looks to the administrative record and asks "whether it contains sufficient evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The standard is not high and requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* But the ALJ's decision must identify the relevant evidence and build a "logical bridge" between that evidence and the final determination. *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014).

## A.  Subjective complaints

The parties' primary dispute relates to Whitcher's subjective complaints. At the administrative hearing, Whitcher said that he has to lie down 70 to 80 percent of the day because of pain, that he had been using a cane, and that he couldn't lift 20 pounds or walk for six hours of an eight-hour day. R. 18. The ALJ discussed numerous reasons throughout his decision for finding that Whitcher was not as limited as he said he was: (1) Whitcher performed many activities that were inconsistent with his testimony, including laying carpet, chopping and carrying wood, and moving a clothes dryer upstairs; (2) one hospital doctor said that Whitcher didn't appear to be in significant pain when he didn't realize he was being observed; (3) doctors had denied some of Whitcher's requests for pain medication; (4) numerous medical examinations showed that Whitcher had a normal gait, a normal range of motion, and normal

strength in his extremities, even when he was reporting to the emergency room for pain; (5) x-rays of Whitcher's knee showed only mild degeneration; (6) Whitcher continued working after his onset date; and (7) Whitcher didn't consistently follow instructions to participate in physical therapy.

Whitcher challenges most of these reasons, but he doesn't challenge the ALJ's reliance on medical records showing that Whitcher often had a normal gait and normal range of motion and strength in his extremities. *See* R. 1582, 1640, 1938, 2122, 2430, 2458. This reason alone would be enough to uphold the ALJ's decision. *See Hall v. Berryhill*, 906 F.3d 640, 644 (7th Cir. 2018) (upholding ALJ's determination even though some reasons weren't supported by the record); *Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013) (ALJ must "provide *some* evidence supporting her determination" (emphasis added)). But both sides devote much of their briefs to the activities of daily living and the hospital doctor's observations, and the ALJ relied heavily on those reasons, so the court will explain why Whitcher's challenges to those reasons fail.

1. **Activities of daily living**

Whitcher acknowledges that his medical records are replete with references to activities that are inconsistent with his alleged limitations. These activities include working on his father's car, R. 359, working on his own car, R. 1959, working on a trailer hitch, R. 1497, laying carpet, R. 1572, 2272, picking up his motorcycle as it was falling over, R. 2070, moving a dryer upstairs, R. 2118, cutting up a tree and lifting some logs, R. 1638, driving a forklift, R.1621, and working on his lawnmower, R. 2043.

Whitcher says that the above activities actually *support* his claim of disability because he ended up in the emergency room when he engaged in them. And he says that the ALJ erred

by failing to consider the surrounding "context" of his activities, including both the consequences of those activities and the reasons he engaged in them in the first place. Dkt. 24, at 16; Dkt. 28, at 1.

Whitcher overstates the record when he says that each of the cited activities landed him in the ER. For example, one record from 2017 says that Whitcher was laying carpet again because he had "no major concerns or complaints" with his right shoulder, R. 1572; it says nothing about receiving emergency medical care. In a record from 2018, he doesn't report that he had any difficulty pulling a dryer upstairs using a dolly as his brother pushed from below; he ended up in the hospital because he slipped and fell, not because he was unable to bear the load. R. 2118. In another, he says that he was cutting up a tree, but that he had a flare up of back pain *later* while he was "lifting up some logs." R. 1638. Others say that activities caused some pain, not that they required emergency medical care. R. 359 ("some shoulder pain" after doing work underneath father's car); R. 1497 ("hurt while working on a trailer hitch").

Regardless, Whitcher misreads the ALJ's decision as finding that Whitcher was capable of performing all the cited activities. In fact, the ALJ repeatedly acknowledged that some of the activities caused pain, R. 18, 19, and he stated that Whitcher's impairments "would restrict him from heavier work due to the potential for symptomatic exacerbation." R. 21. The ALJ's point was a narrower one: Whitcher's repeated decisions to engage in activities that "require significant physical demands" were inconsistent with an allegation that he could not perform even light work. R. 20. That may not be the only reasonable inference to draw from the evidence, or even the most reasonable inference, but that's not the standard. "[I]n a case such as this, in which the record supports more than one reasonable conclusion, a reviewing court must defer to the administrative law judge's reasoned consideration of the evidence." *Devries v.*

4

*Astrue*, No. 09-cv-636-bbc, 2010 WL 1643234, at *11 (W.D. Wis. Apr. 22, 2010). The ALJ explained his reasoning, and his finding isn't "patently wrong," so this court may not disturb it. *See Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013).

Whitcher also says that the ALJ erred by failing to discuss the "vitiating details" that Whitcher provided about his activities during the administrative hearing. Dkt. 28, at 1. But Whitcher doesn't explain how that testimony supports his claim. The court's own review revealed the opposite. For example, Whitcher initially failed to disclose the activities at all, answering "yes" when the ALJ asked him whether all he did was "stay in the house" and do some chores like taking out the trash. R. 62. When the ALJ specifically asked about the activities, Whitcher said that "it only takes five minutes" to complete them. R. 62–63. That may be the case for an activity like lifting a dryer, but it would be unusual for someone to lay carpet, chop wood, or work on a car for such a short period of time.

In response to a question from counsel, Whitcher later said that he engaged in the activities because "there's no one else to do them." R. 63. But that's inconsistent with his previous testimony that his only responsibilities at home are to take out the trash and mow the lawn using a riding lawnmower. R. 58. He doesn't explain why he would be responsible for fixing family members' cars or laying their carpet.

When the ALJ asked Whitcher about moving the dryer, Whitcher minimized his involvement, stating that all he did was "guide[]" the dryer from below while his brother lifted it up the stairs using the dolly. R. 64. But that contradicts the medical record, which says that *Whitcher*, not his brother, was pulling the dryer from above. R. 2118.

5

The bottom line is that the records and the testimony Whitcher cites allow for more than one inference, and the inferences that the ALJ drew were reasonable. So the ALJ did not err by finding that Whitcher's activities of daily living undermine his disability claim.

## 2. Hospital physician's observation

The ALJ relied on a note by a hospital physician as evidence that Whitcher was exaggerating his pain. In the note, the physician observed:

> When I entered the room, [Whitcher] was trying to eat his dinner and seemed to be not in any significant pain. However, as soon as I entered, he stated that he had to lie down because it was almost impossible for him to stay up because of the pain involving his back and on any kind of movements of his spine, he would complain about very severe degree of pain going down the left leg. . . . Patient also seems to be very apprehensive. Similarly, during his previous examination in my office, he was constantly moaning and groaning, which is a constant thing. However, when I can distract his attention, he seems calm.

R. 2226. Whitcher challenges the ALJ's reliance on this note for two reasons: (1) the physician didn't expressly find that Whitcher was a malingerer; and (2) in a later note, the physician observed, "I think [Whitcher] has sprained his back muscles pretty bad, which can cause a severe degree of pain involving the back after any kind of slight movement." R. 2235.

Whitcher is correct that the physician didn't expressly find that he was a malingerer, but he doesn't explain why that matters. The question isn't whether the *physician* found Whitcher to be credible; it is whether the *ALJ's* credibility assessment was patently wrong. Regardless whether the physician used the term "malingerer," it was reasonable for the ALJ to interpret the actions the physician described as supporting the view that Whitcher was exaggerating his pain.

The note that Whitcher cites is some evidence that the physician believed that Whitcher was in pain, but even in that note, the physician expressed some skepticism, writing:

6

> He seems to have these sensory deficits involving the left leg, which are nonorganic in nature and not compatible with radiculopathy, and there is no other pathology involving the lumbar spine to explain that. So I think they are functional in nature. Moreover, by his traumatic behavior, I also feel that there is also some functional overlay to his overall clinical picture.

*Id.* The physician qualified this statement with the one quoted by Whitcher, but that shows only that the physician was uncertain himself. Again, the ALJ could have interpreted the physician's note differently, but the ALJ's interpretation was reasonable, and nothing more is required under the standard of review.

### B.  Other objections

Whitcher's other objections don't require extended discussion. First, he says that the ALJ erred by devoting only a short paragraph to his conclusion that Whitcher doesn't meet the requirements for Listing 1.04, which relates to disorders of the spine. But, as the commissioner points out, it is Whitcher's burden to show that he qualifies for a listing. *See Hapner v. Saul*, 818 F. App'x 552, 557 (7th Cir. 2020) ("Although an ALJ should provide a step-three analysis [relating to medical listings], a claimant first has the burden to present medical findings that match or equal in severity all the criteria specified by a listing."); *Eskew v. Astrue*, 462 F. App'x 613, 616 (7th Cir. 2011) ("The burden of proof at step 3 [relating to medical listings] rests with the claimant, and the ALJ has no duty to analyze equivalence when the claimant . . . presents no substantial evidence of it."). Whitcher says that the ALJ failed to consider certain evidence when considering Listing 1.04, but he doesn't explain how any of that evidence satisfies Listing 1.04's requirements. Whitcher drops this issue in his reply brief, which the court will construe as an acknowledgment that he can't meet his burden.

Second, Whitcher says that the ALJ erred by finding that Whitcher didn't suffer from any severe mental impairments and then by failing to include any restrictions related to mental

7

health in the RFC. But the ALJ explained his reasons for these conclusions: "the record reveals largely routine conservative treatment inconsistent with a severe impairment; or, in the case of brief aggressive treatment, the record fails to reveal the persistence of significant sequelae satisfactory of the one-year duration requirement set out for severe impairments." R. 16. Whitcher doesn't challenge this reasoning, and he doesn't identify any additional limitations that the ALJ should have included. *See Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016) (claimant is not entitled to relief on appeal if he "does not identify medical evidence that would justify further restrictions"); *Hoy v. Astrue*, 390 F. App'x 587, 592 (7th Cir. 2010) (rejecting argument that the ALJ failed to consider effect of impairments in combination when the plaintiff "only speculate[d] about the effect of these conditions on him").

Third, Whitcher says that the ALJ shouldn't have given weight to the opinions of the state agency consultants because new evidence arose after the consultants issued their opinions. He cites an MRI of his lumbar spine and other documents showing that he suffered from degenerative disc disease. "ALJs may not rely on outdated opinions of agency consultants if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion." *Lambert v. Berryhill*, 896 F.3d 768, 776 (7th Cir. 2018) (internal quotation marks omitted). But it is the plaintiff's burden to explain how the new evidence could have altered the consultants' opinions and the ALJ's decision. *See Keys v. Berryhill*, 679 F. App'x 477, 481 (7th Cir. 2017). In this case, the ALJ found that Whitcher's degenerative disc disease was a severe impairment, and Whitcher doesn't contend that the MRI is evidence that his condition had worsened. So it isn't clear how the documents Whitcher cites could have made a difference to his disability claim. In any event, the ALJ discussed the consultants' opinions only briefly in his decision. He relied more on evidence that doesn't

require expertise to evaluate, such as physical examinations showing that Whitcher had normal strength and range of motion, and evidence that Whitcher was exaggerating his symptoms. So a remand isn't required for the purpose of obtaining an updated expert opinion.

Fourth, Whitcher says that the ALJ erred by failing to include restrictions in the RFC that Whitcher needs a railing to climb stairs and can't kneel or crouch, even though the ALJ gave great weight to the agency consultants' opinions that included both restrictions. The commissioner says that any error is harmless because none of the representative jobs that the ALJ found that Whitcher can perform require the employee to climb stairs, kneel, or crouch. *See* Dkt. 25, at 15. Whitcher doesn't respond to this argument in his reply brief, so he has conceded the point.

Fifth, and finally, Whitcher challenges the ALJ's decision not to give weight to the opinion of Jason S. So, D.O., who "recommended" that Whitcher "avoid heavy lifting over 10–15 lbs." R. 2539. The ALJ gave multiple reasons for discounting So's opinion, but the court need only consider one of them, which is that the opinion was inconsistent with physical examinations demonstrating Whitcher's "grossly intact power." R. 21. Whitcher doesn't challenge that reason, so he hasn't shown that the ALJ erred.

**C. Conclusion**

Whitcher hasn't identified any errors of the ALJ that require a remand. So the court will affirm the decision of the commissioner.

ORDER

IT IS ORDERED that the decision of the commissioner is AFFIRMED and the March 9, 2021 oral argument is CANCELED. The clerk of court is directed to enter judgment in favor of the commissioner and close this case.

Entered March 3, 2021.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge